**PIQUNIQ MANAGEMENT
CORPORATION,
Appellant,**

**v.**

**Jesse A. REEVES, Appellee.**

**No. S–8016.**

Supreme Court of Alaska.

Nov. 6, 1998.

Kenneth P. Eggers, Todd J. Timmermans, Groh Eggers, LLC, for Appellant.

Richard W. Maki, David H. Shoup, Partnow Tindall Bennett & Shoup, P.C., for Appellee.

Before MATTHEWS, C.J., and COMPTON, EASTAUGH, FABE and BRYNER, JJ.

## OPINION

BRYNER, Justice.

Jesse A. Reeves worked sixty weeks for Piquniq Management Company at an annual salary of $57,876. He worked a two-weeks-on/two-weeks-off schedule and averaged ninety-eight-hour weeks while on the job, but received no overtime pay. Reeves sued PMC for overtime wages and won. To determine Reeves's damages, the trial court converted his salary to a regular hourly rate. It used this rate as a basis for computing his overtime earnings. Without computing his straighttime or total wages on the same basis, the court awarded Reeves the entire amount of his overtime earnings as damages. Because this award pays Reeves twice his regular hourly rate for his actual straighttime work, we reverse.

## I. FACTS AND PROCEEDINGS

PMC operates a waste disposal facility for the North Slope Borough. Reeves worked there as a PMC employee for about two years, regularly spending two weeks on the job and two weeks off; when on the job, he worked seven days a week and at least twelve hours a day.

PMC initially placed Reeves in a non-exempt position and paid him eighteen dollars per hour for straighttime work and twenty-seven dollars per hour for overtime work. After several months, PMC promoted Reeves to the newly created position of operations supervisor, which it considered to be exempt from overtime compensation. Reeves accepted the job at an annual salary of $57,876.

PMC gave Reeves no written employment contract, but he understood that he would continue to work seven-day workweeks on a schedule of two weeks on and two weeks off and that his normal workday would remain approximately twelve hours.

Reeves stayed in the operations supervisor position for sixty weeks. Because of his alternating work schedule, he actually worked thirty of those weeks. During this sixty-week period, his annual salary of $57,876 yielded him total pay of $66,780. After sixty weeks, PMC moved Reeves to another position. Less than four months later, it laid him off.

Reeves sued PMC, claiming that the company had improperly classified him as an exempt employee during his stint as operations supervisor and that he was entitled to overtime pay for his sixty weeks in that position.

At a bench trial before Superior Court Judge Peter A. Michalski, the parties litigated whether Reeves was properly classified as an exempt employee while he was PMC's operations supervisor, how many hours per week he worked, and how much overtime compensation PMC owed him. The court found that PMC had improperly classified Reeves as exempt. It also found that, in his sixty weeks as operations supervisor, Reeves had worked thirty weeks, with each workweek consisting of seven working days, each workday averaging fourteen hours.

The court next calculated Reeves's unpaid overtime wages. Deducting forty hours of straighttime work from Reeves's average ninety-eight-hour workweek, the court found that Reeves had worked fifty-eight hours of overtime each workweek. This gave Reeves 2940 total hours, with 1200 at straighttime pay and 1740 at overtime pay.[1]

Reeves was entitled to his "regular rate of pay" for his straighttime hours and to one and one-half times his regular rate for his

---

1. Under AS 23.10.060(b), workers must be paid overtime wages at one and one-half times their regular rate of pay for all hours in excess of 8 per day or 40 per week; hours worked up to 8 per day or 40 per week are straighttime.

   Reeves's straighttime hours, overtime hours, and total work hours are computed as follows: 30 workweeks × 40 straighttime hours per week = 1200 straighttime hours; 30 workweeks × 58 overtime hours per week = 1740 overtime hours. 1200 straighttime hours + 1740 overtime hours = 2940 total hours.

overtime hours.[2] To compute Reeves's regular rate of pay, the trial court treated his $57,876 annual salary as straighttime wages for fifty-two weeks of forty hours per week. This resulted in a regular rate of $27.83 per hour; multiplied by one and one-half, the regular rate resulted in an overtime rate of $41.74 per hour.[3] Multiplying this hourly overtime rate by the 1740 overtime hours Reeves worked during his sixty weeks as operations supervisor, the court calculated his overtime earnings to be $72,627.60.

The court considered this full amount of overtime earnings to be unpaid overtime wages, awarding them to Reeves as his overtime damages; adding an equivalent amount for liquidated damages,[4] the court calculated Reeves's total damages (excluding prejudgment interest, costs, and attorney's fees) to be $145,255.20. PMC appeals.

## II. THE TRIAL COURT ERRED IN CONCLUDING THAT PMC OWED REEVES THE FULL AMOUNT OF HIS OVERTIME EARNINGS.

### A. The Applicable Legal Framework

■ To determine the extent of a worker's overtime damages in a case involving an Alaska Wage and Hour Act (AWHA) overtime claim, the court must answer two distinct questions: how much pay the worker has earned, and how much the employer still owes. At issue in this case is how these questions should be answered when the claimant has been paid an annual salary rather than an hourly wage.[5] The AWHA requires that they be answered by using the worker's regular rate of pay: "If an employer finds it necessary to employ an employee in excess of 40 hours a week or eight hours a day, compensation for the overtime at the rate of one and one-half times the regular rate of pay shall be paid." [6]

But the AWHA does not itself define what "regular rate of pay" means for a worker who, like Reeves, receives an annual salary instead of an hourly wage. Title 8, section 15.100(a) of the Alaska Administrative Code (AAC) addresses this issue. It provides that, for purposes of computing overtime compensation, all salary must be converted to an hourly rate figured on a weekly basis:

(a) An employee's regular rate is the basis for computing overtime. The regular rate is an hourly rate figured on a weekly basis. An employee need not actually be hired at an hourly rate.... However, the applicable compensation basis must be converted to an hourly rate when determining the regular rate for computing overtime compensation.[7]

Two subparagraphs of this regulation further define the methods for converting salary to regular rate of pay. The first allows a salaried employee's regular rate of pay to be set by employment contract, but only if the contract clearly spells out the expectations of the employer and worker, and only if actual practice conforms to those expectations:

---

2. See supra note 1.

3. $57,876 annual salary ÷ 52 weeks = $1113 weekly salary. $1113 weekly salary ÷ 40 straighttime weekly hours = $27.83 per hour regular rate of pay. $27.83 per hour regular rate × 1.5 = $41.74 per hour overtime rate of pay.

4. Under the version of AS 23.10.110(a) that applied when Reeves worked for PMC, an employer who failed to pay overtime automatically became liable for liquidated damages in an amount equal to the unpaid overtime compensation. The statute has recently been amended to allow an exemption from liquidated damages for employers who establish that they acted in good faith. See ch. 37, §§ 1, 3, SLA 1995.

5. This issue involves the interpretation of 8 Alaska Administrative Code (AAC) 15.100. We have held this particular regulation to be "quasi-legislative," Dresser Indus., Inc. v. Alaska Dep't of Labor, 633 P.2d 998, 1004 (Alaska 1981), and have further held that "administrative regulations which are legislative in character are interpreted using the same principles applicable to statutes." State, Dep't of Highways v. Green, 586 P.2d 595, 603 n. 24 (Alaska 1978). We interpret statutes de novo. See Tipton v. ARCO Alaska, Inc., 922 P.2d 910, 912 n. 1 (Alaska 1996); Janes v. Otis Eng'g Corp., 757 P.2d 50, 53 n. 2 (Alaska 1988). In interpreting a statute or regulation, we will adopt the most persuasive rule of law in light of precedent, reason, and policy. See Boone v. Gipson, 920 P.2d 746, 748 (Alaska 1996).

6. AS 23.10.060(b). This provision applies to all employment contracts. See AS 23.10.060(c).

7. 8 AAC 15.100(a).

(1) The employment contract must set out the specific number of hours the employee is expected to work each day and each week. The contract must establish a regular hourly rate of pay with respect to the salary to be paid and the hours to be worked. Changes to the pay schedule of a salaried employee must conform to the provisions of AS 23.05.160.[8]

The second subparagraph applies in default of the first; it requires that, in the absence of an employment contract complying with subparagraph (a)(1), the worker's salary must be deemed compensation for a forty-hour week of eight-hour days:

(2) If a contract fails to establish a fixed number of daily and weekly hours for which the salary is intended to compensate, or if the actual hours of work deviate from the hours specified in the contract, the salary will be considered to be compensation for an eight-hour work day and 40–hour workweek, and overtime will be computed on that basis.[9]

This is the provision that the superior court relied on to calculate Reeves's overtime award.

### B. *The Parties' Arguments*

On appeal, PMC does not dispute that the superior court correctly applied 8 AAC 15.100(a)(2) to convert Reeves's annual salary to a regular hourly rate of pay, or that it correctly determined, on that basis, how much overtime pay Reeves actually earned. But it questions the court's assumption that all of Reeves's earned overtime wages should be treated as being unpaid. PMC draws a distinction between the total amount of overtime wages earned on the basis of regular rate of pay and the total amount of "overtime damages"—PMC's term for the total amount of overtime earnings remaining unpaid. PMC argues that 8 AAC 15.100(a)(2) applies in computing overtime earnings, but not in determining the ultimate issue of "overtime damages." PMC proposes that, for purposes of determining overtime damages, the overtime rate of pay calculated under 8 AAC 15.100(a)(2) should be plugged into a federal formula, applicable for purposes of determining overtime damages under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207(a)(1) (1994), whose terms would vary depending on how Reeves's employment contract with PMC is interpreted. But the federal formula and the cases PMC cites supporting it are inapposite in the context of the AWHA, since the FLSA contains no provision analogous to 8 AAC 15.100(a)(2). Thus we need not discuss the federal formula proposed by PMC or the federal case law it cites.

Reeves, for his part, defends the court's award of damages. He insists that the method of computing overtime compensation set out in 8 AAC 15.100(a)(2) encompasses "overtime damages," as well as overtime earnings. According to Reeves, subparagraph (a)(2) "allocates the entire salary to regular hours and allocates nothing to the overtime hours." Reeves thus maintains that the court correctly treated all of his overtime earnings as overtime damages.

We conclude that each party's argument is only partially persuasive. To explain our conclusion, we begin by reviewing the manner in which the trial court arrived at Reeves's total overtime earnings. Then we consider whether the court correctly treated all of his overtime earnings as overtime damages.

### C. *The Superior Court Correctly Calculated How Much Overtime Pay Reeves Earned.*

PMC paid Reeves an annual salary of $57,-876. To convert this annual salary to a regular rate of pay, the court was first required to "figure[ ]" this annual salary "on a weekly basis."[10] Reeves's annual salary translated to a weekly salary of $1113.[11]

---

**8.** 8 AAC 15.100(a)(1).

**9.** 8 AAC 15.100(a)(2).

**10.** 8 AAC 15.110(a).

**11.** *See supra* note 3. Reeves concedes that he was a fulltime employee of PMC. He acknowledged below that his annual salary must be divided by fifty-two weeks, rather than by his twenty-six actual workweeks per year, to derive his regular weekly rate of pay. On appeal, Reeves does not dispute that the court correctly computed his overtime earnings on that basis.

Next, since Reeves's regular rate of pay was not set by an employment contract, the court converted his salary to a regular hourly rate by the method specified in 8 AAC 15.100(a)(2); treating Reeves's $1113 weekly salary as straighttime compensation for eight-hour workdays totaling forty hours of work per week, the court determined his regular hourly wage to be $27.83, and his overtime rate to be $41.74.[12]

The court then used this overtime rate to compute Reeves's overtime earnings. In sixty weeks of salaried employment at $1113 per week, Reeves received pay totaling $66,-780.[13] During this time, because of his two-weeks-on/two-weeks-off work schedule, Reeves actually worked only thirty weeks, averaging ninety-eight hours (seven fourteen-hour workdays) of work each workweek, for a total of 2940 hours.[14] Of this total, 1200 hours were straighttime; 1740 were overtime.[15] Multiplying Reeves's 1740 actual overtime hours by his $41.74 hourly overtime rate of pay, the court figured his earned overtime pay to be $72,627.60.[16]

While the parties contested various aspects of this computation below, on appeal the parties no longer challenge the court's conclusion that Reeves actually earned $72,-627.60 in overtime pay; nor do they dispute the method of converting salary to regular pay that led the court to reach this conclusion. Thus it is undisputed that the court correctly applied 8 AAC 15.100(a)(2) to answer the first question posed in determining Reeves's overtime damages: how much overtime did Reeves earn?

D. *After Computing How Much Overtime Pay Reeves Earned, the Court Erred in Failing to Consider Separately How Much Pay PMC Still Owed Him.*

■ Upon determining how much overtime Reeves earned, the court, without fur-

ther explanation, awarded him the entire amount of his overtime earnings as overtime damages. In failing to consider separately how much of Reeves's earned overtime wages PMC still owed him, the court made two tacit assumptions: first, that none of Reeves's overtime earnings had yet been paid; and, second, that all of his previously paid salary should count as straighttime compensation, no matter how few straighttime hours Reeves had actually worked.

Reeves insists that the court correctly applied 8 AAC 15.100(a)(2) in reaching this result. He reasons that subparagraph (a)(2)

> is clear on its face. It expressly provides the salary "will be considered to be compensation for an eight-hour work day and 40–hour workweek...." Contrary to PMC's claims, this regulation does more than simply define the regular and overtime rates; it provides that the salary *is* the compensation for a regular workweek.

But subparagraph (a)(2) is not a freestanding provision; it must be read in the context of 8 AAC 15.100(a) as a whole. In its opening sentences, 8 AAC 15.100(a) defines regular rate of pay as "an hourly rate figured on a weekly basis" and provides that salary "must be converted to an hourly rate when determining the regular rate[.]" This provision requires Reeves's annual salary to be "figured" as a weekly salary; his weekly salary—$1113—is what subparagraph (a)(2) refers to in commanding that "the salary will be considered to be compensation for an eight-hour work day and 40–hour workweek."

Moreover, subparagraph (a)(2) does not directly define overtime damages; it merely prescribes the correct method by which a worker's salary "must be converted to an hourly rate ... for computing overtime compensation."[17] Because paragraph (a) specifies that "the regular rate is the basis for computing overtime," subparagraph (a)(2)

---

**12.** *See id.*

**13.** 60 weeks of salary at $1113 per month = $66,780 total salary.

**14.** *See supra* note 1.

**15.** *See id.*

**16.** 1740 overtime hours × $41.74 per hour overtime pay (based on 1.5 × the regular hourly rate of $27.83) = $72,627.60.

**17.** 8 AAC 15.100(a).

cannot in itself be considered to define overtime damages. Instead, it seems apparent that, once the regular rate of pay is derived by following subparagraph (a)(2)'s conversion process, paragraph (a) effectively makes the rate determinative of overtime damages by prescribing that it be used "as the basis for computing overtime."

Thus, when read in light of paragraph (a), subparagraph (a)(2) does not support the proposition that Reeves's entire annual salary should automatically be treated as compensation for whatever straighttime hours he actually worked. Rather, it stands for the narrower and more sensible proposition that each week of Reeves's salary should be treated as compensation for a corresponding week of actual straighttime work at his regular rate of pay. In effect then, subparagraph (a)(2) strives to ensure that salaried workers, like hourly workers, are compensated on the basis of their regular rate of pay for all of the hours they actually work.

So construed, 8 AAC 15.100(a)(2) requires a salaried worker's overtime compensation to be measured by the difference between the total salary actually paid by the employer and the total wages earned by the employee for all hours actually worked—straighttime and overtime—based on the regular rate of pay. Because the difference between total pay earned and total salary paid will always reflect the additional wages necessary to ensure payment based on the regular rate for all hours actually worked, this difference must serve as the primary measure of overtime damages. As a secondary measure, this difference must be doubled to account for liquidated damages. *See* AS 23.10.110.

■ Accordingly, 8 AAC 15.100(a) and (a)(2) require a salaried worker's award for unpaid overtime compensation to be computed by: (1) "figuring" the worker's salary on a weekly basis; (2) assuming that the week of salary represents pay for a week of straighttime work; (3) using the "regular rate" of

hourly pay derived from this assumption as the basis for determining the worker's total compensation for all hours actually worked; and (4) deducting from this amount all amounts of salary actually paid.

Applying this approach to Reeves's situation yields the following computation. In his sixty weeks of work at an annual salary of $57,876, Reeves received pay totaling $66,-780.[18] During this time, he actually worked a total of 2940 hours. Of that total, 1200 hours were straighttime; 1740 were overtime.[19] Under 8 AAC 15.100(a)(2), his weekly salary was $1113, and so his regular rate of pay was $27.83 per hour and his overtime rate was $41.74.[20] Applying the overtime rate to Reeves's overtime hours yields earned overtime pay of $72,627.60;[21] applying the regular rate of pay to Reeves's actual straighttime hours yields earned straighttime pay of $33,396.00.[22] The total of straighttime and overtime earnings is $106,023.60.[23]

Based on his regular rate of pay, this is the amount that Reeves earned for the work that he actually performed. Deducting the $66,780 in salary that PMC actually paid Reeves from the wages of $106,023.60 that he actually earned leaves $39,243.60. This is the amount of Reeves's overtime damages— the overtime compensation that remains unpaid.

In many cases, the trial court's method might yield the same result; that method, again, was to simply treat all earned overtime wages as damages and all previously paid salary as actually earned straighttime pay. But, as we have seen, the court determined Reeves's regular rate of pay on the premise that each week of his annual salary would pay for a week of actual straighttime work. Yet because of his alternating work schedule, Reeves actually worked only half of the weeks for which he received annual salary. In sixty weeks of salaried employment,

---

18. *See supra* note 14.

19. *See supra* note 1.

20. *See supra* note 3.

21. *See supra* note 17.

22. 1200 hours of straighttime wages × $27.83 regular rate of pay per hour = $33,396.00.

23. $106,396.00 in straighttime pay + $72,627.60 in overtime pay = $106,023.60 total pay.

he earned only thirty weeks of straighttime pay.

Under these peculiar circumstances, treating all of Reeves's salary as straighttime pay and all of his earned overtime as damages would yield an anomalous result: the salary PMC paid Reeves would amount to straighttime pay of $55.65 per hour, or twice the regular hourly rate of pay contemplated under 8 AAC 15.100(a)(2).[24]

Because this hourly rate doubles the regular rate imputed to Reeves under the regulation, it has no basis in law. And because no evidence in the record suggests that Reeves's sixty weeks of salary were actually intended to pay only forty hours per week of straighttime wages for thirty workweeks,[25] this rate of pay has no basis in reality, either. Nor can Reeves plausibly justify this enhanced rate of pay as an intended or appropriate sanction for PMC's failure to make timely payment of his full overtime wages. The liquidated damages provision of AS 23.10.110 already imposes the appropriate measure of punishment for PMC's late payment.[26]

In short, to count Reeves's entire sixty weeks of salary as pay for only thirty weeks of actual straighttime work would violate subparagraph (a)(2)'s mandate to consider each week of his salary as a week of straighttime pay.

### III. CONCLUSION

■ We thus conclude that the trial court erred in treating Reeves's entire salary as straighttime pay. We hold that a court converting annual salary to a regular rate of hourly pay under 8 AAC 15.100(a)(2) must use the regular rate as a basis for computing total earnings for all hours actually worked. All salary actually paid must be deducted from these total earnings. The difference will reflect the award necessary to ensure that straighttime, overtime, and total compensation are all based on the applicable regular rate of pay. This is the proper measure of Reeves's overtime damages.

Because the trial court's decision to treat all of Reeves's earned overtime pay as unpaid overtime wages would pay Reeves at twice his regular rate for his actual straighttime hours, we REVERSE the judgment and REMAND for recalculation of damages in a manner consistent with this opinion.

---

**24.** Actual pay of $66,780 ÷ 1200 actual straighttime hours = $55.65 per hour. $55.65 ÷ 2 = $27.825.

**25.** As we have previously observed, Reeves himself understood his salary to cover a two-week-on/two-week-off schedule of seven days a week at approximately twelve hours a day.

**26.** *See McKeown v. Kinney Shoe Corp.*, 820 P.2d 1068 (Alaska 1991); *Alaska Int'l Indus. Inc. v. Musarra*, 602 P.2d 1240 (Alaska 1979). Moreover, automatic treatment of all earned overtime as actual damages would be wholly arbitrary if construed as an added sanction for late payment of overtime. Such a sanction would, for no apparent reason, single out for additional punishment those nonpaying employers with workers on irregular schedules. Besides being arbitrary, a sanction of this kind would produce anomalous results. In the current case, for instance, it would have the effect of punishing PMC for failing to recognize that Reeves might have been required to work increased hours for no additional pay; had PMC known that Reeves's entire salary would automatically be considered compensation for Reeves's straighttime hours, it could have required him to work thirty additional 40–hour workweeks of straighttime for no additional pay. The added work would only have increased Reeves's straighttime hours, which his salary would already be deemed to cover; it would not have increased his overtime or affected his regular rate of pay, as calculated under 8 AAC 15.100(a)(2).